IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN CLARK § | |
| § | |
| *Plaintiff on behalf of himself and* § | |
| *all others similarly situated* § | |
| § | |
| vs § | CIVIL ACTION NO. _____ |
| § | |
| AVATAR TECHNOLOGIES PHL., INC. § | JURY DEMANDED |
| and FLOWROUTE, LLC § | |
| § | |
| *Defendants* § | |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiff, John Clark, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

### INTRODUCTION

1. John Clark ("Plaintiff") brings this class action for damages resulting from the illegal actions of Avatar Technologies, Phl., Inc. ("Avatar") and Flowroute, LLC ("Flowroute") (collectively, "Defendants"). Avatar negligently, knowingly, and/or willfully placed automated calls with an altered caller identification to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* (the "TCPA"). Flowroute aided and abetted the TCPA statutory violations and Defendants have been unjustly enriched.

### JURISDICTION AND VENUE

2. This Court has original jurisdiction over Plaintiff's TCPA claims. *Mims v. Arrow Fin. Serv., LLC,* 132 S.Ct. 740 (2012).

3. Jurisdiction in this District is proper pursuant to 28 U.S.C. § 1332(d)(2), as Plaintiff seeks up to $1,500.00 in damages for each violation of the TCPA, which when aggregated among

a proposed class numbering more than a thousand members, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Plaintiff also alleges a national class which will result in at least one class member residing in a different state.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), because Plaintiff resides within the Southern District of Texas, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendants regularly conduct business in this District.

## PARTIES

5. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Houston, Texas.

6. Avatar is, and at all times mentioned herein was, a business entity headquartered in the Philippines at Golden AC Business Center, 2nd Floor, Iloilo City, Jaro. It may be served with process at its headquarters or wherever its principals may be found.

7. Flowroute is, and at all times mentioned herein was, a Nevada limited liability company headquartered at 1221 2nd Avenue, Suite 330, Seattle, Washington 98101. It may be served with process at its headquarters or wherever its principals may be found.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

8. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

9. The TCPA regulates, among other things, the use of automated telephone dialing systems.

10. 47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

(a) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(b) to dial such numbers.

11. Specifically, 47 U.S.C. § 227(b)(1)(A)(iii) prohibits any call using an ATDS **or** an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes. The TCPA further expressly prohibits callers from using these automated schemes whether they are inside or outside the United States. The call constitutes a violation of the TCPA if the call is received in the United States. 47 U.S.C. § 227(b)(1).

12. According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. The FCC also recognized that wireless customers are charged for incoming calls.[1]

## ALLEGATIONS APPLICABLE TO ALL COUNTS

13. Upon information and belief, Avatar employs an ATDS which meets the definition set forth in 47 U.S.C. § 227(a)(1).

14. On or about July 31, 2013, Defendant Avatar contacted Plaintiff on Plaintiff's cellular telephone using an 'artificial or prerecorded voice" as defined by 47 U.S.C. § 227(b)(1)(A), using Flowroute's VoIP services, and employing Flowroute's Calling Name Management Service ("CNAM-MS") to alter the caller's identification as it appeared on Plaintiff's cellular phone. The

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

number purportedly used to call Plaintiff was 281-674-7327. Class members have received calls on their cellular phones from Avatar and through Flowroute purportedly from numbers including but not limited to 281-674-7327 and 281-653-7116. Avatar reveals on its website, "How does Avatar work? ... [T]he script appropriate for the sale type is sent out to a voice talent for recording, when the recording is approved, it is split into sound bites and attached to a soundboard that is part of our *predictive dialers*." (See http://www.avatartechnologies.com.ph/) (emphasis added).[2] Flowroute currently proclaims on its website, "Our state of the art carrier-grade platform can handle bursts of thousands of calls per second." (See http://www.flowroute.com as of 9/18/2013).

15. The telephone number that Defendants used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

16. Pursuant to the contract with his cellular service provider, Plaintiff is charged for incoming calls made to his cellular telephone.

17. Defendants did not have prior express consent to place automated or prerecorded calls with an altered caller identification to Plaintiff on his cellular telephone.

18. Defendants' calls to Plaintiff's cellular telephone were not for "emergency purposes." To the contrary, the caller claimed to be selling auto insurance.[3]

---

[2] The FCC has concluded that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd 14014, 14093 (July 3, 2003).

[3] The caller also violated the Telemarketing Sales Rule ("TSR") in numerous respects, including but not limited to misrepresenting that the DMV was reporting that the call recipient was overpaying for auto insurance and failing to identify itself. Flowroute also violated the TSR by "assisting and facilitating" the telemarketer pursuant to 16 CFR §310.3(b).

## CLASS ACTION ALLEGATIONS

A.  **The Class**

19.  Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

20.  Plaintiff's proposed Class is as follows, subject to amendment as appropriate:

**Class Definition. All persons within the United States who received one or more non-emergency telephone calls from Avatar to a cellular telephone through the use of (a) an ATDS or an artificial or prerecorded voice, (b) Flowroute's VoIP services, and (c) Flowroute's CNAM-MS and who did not provide prior express consent for such calls.**

21.  Excluded from the Class are all officers, directors, and employees of Defendants, together with those individuals' immediate family members, and their respective legal representatives, heirs, successors and assigns, the officers, directors and employees of any parent, subsidiary or affiliate of Defendants, together with those individuals' immediate family members, Counsel for Defendant and Class Counsel and their immediate family members, in addition to those whose claims are barred by the statute of limitations.

B.  **Numerosity**

22.  Upon information and belief, Defendants have placed automated calls using an artificial or prerecorded voice through Flowroute's VoIP services and along with Flowroute's CNAM-MS to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

23.  The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable

of ministerial determination from Defendants' call records.

C. **Common Questions of Law and Fact**

24. There are common questions of law and fact raised in this Complaint which predominate over any questions affecting only individual Class members.

25. The following questions of law and fact common to the Class members are ripe for determination:

    a. Whether Defendants made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS or an artificial or prerecorded voice, Flowroute's VoIP, and Flowroute's CNAM-MS;

    b. Whether Defendants can meet their burden of showing they obtained prior express consent to make each call;

    c. Whether Defendants' conduct was knowing willful, and/or negligent;

    d. Whether Defendants were unjustly enriched with DIP fee revenues;

    e. Whether Defendants conspired with each other and whether Flowroute aided and abetted Avatar in violating the TCPA, including its provisions prohibiting misleading alteration to the caller's identification;

    f. Whether Defendants are liable for damages, and the amount of such damages; and

    g. Whether Defendants should be enjoined from such conduct in the future.

26. The common questions in this case are capable of having common answers. Since Plaintiff's assert that Defendants routinely place automated calls using an artificial or prerecorded voice, Flowroute's VoIP services, and Flowroute's CNAM-MS to telephone numbers assigned to cellular telephone services, Plaintiff and the Class members have identical claims capable of being

6

efficiently adjudicated and administered in this case.

**D.     Typicality**

27.     Plaintiff's claims are typical of the claims of the Class since each of the claims arises from the same or a substantially similar automated telephone call.

**E.     Protecting The Interests of The Class Members**

28.     Plaintiff will fairly and adequately represent Class interests.

29.     All Class claims arise from the very course of conduct and specific activities complained of herein and require application of the same legal principles.

30.     Plaintiff has retained counsel experienced in litigating class actions and consumer claims and who stands ready, willing, and able to represent the Class.

**F.     Proceeding Via Class Action Is Superior And Advisable**

31.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

32.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and therefore would have no effective remedy at law.

33.     The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of both the Court and the litigants, and promotes consistency and efficiency of adjudication.

34.     Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.  Conversely, adjudications with respect to the individual Class members would be dispositive of the interest of all other Class members.

35. The amount of money at issue is such that proceeding by way of a class action is the only economical and sensible manner to vindicate the injuries sustained by Plaintiff and the other members of the Class.

## COUNT I
### Negligent Violations of the Telephone Consumer Protect Act
### 47 U.S.C. § 227, *et seq.*
### (On behalf of All Class Members)

36. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

37. Defendant Avatar negligently placed multiple automated calls using an artificial or prerecorded voice, Flowroute's VoIP services, and Flowroute's CNAM-MS to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

38. Each of the aforementioned calls by Avatar and misleading and/or blocked caller identification services provided by Flowroute constitute a negligent violation of the TCPA.

39. As a result of Defendants' negligent violations of the TCPA, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

40. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendants in the future.

## COUNT II
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227, *et. seq.*
### (On Behalf of All Class Members)

41. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporated them herein by reference.

42. Defendant Avatar knowingly and/or willfully placed multiple automated calls using an artificial or prerecorded voice, Flowroute's VoIP services, and Flowroute's CNAM-MS to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

43. Each of the aforementioned calls by Avatar and misleading and/or blocked caller identification services provided by Flowroute constitute a knowing and/or willful violation of the TCPA.

44. As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

45. Additionally, Plaintiff and the class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III
### Unjust Enrichment
### (On Behalf of All Class Members)

46. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

47. Defendants have been unjustly enriched at Plaintiff's and the Class Members' expense by misappropriating DIP fees, which are paid by the Class Members' cellular service providers to Flowroute for each call and for the right to "dip" into the caller ID database. On information and belief, Flowroute shares the DIP revenue with Avatar. Defendants have obtained and unjustly retained funds improperly obtained from using ATDS, prerecorded messages, and CNAM-MS to Plaintiff's and the Class members' detriment through high-volume violations of

federal laws and regulations. Obtaining and retaining those DIP proceeds as alleged herein violate fundamental principles of justice, equity, and good conscience. Thus, Defendants should be required to disgorge the amounts by which they have been unjustly enriched.

## COUNT IV
## Civil Conspiracy to violate the TCPA and acquire DIP fee revenue
### (On Behalf of All Class Members)

48. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

49. Defendants agreed and conspired to violate the TCPA and acquire DIP fees from high-volume violations of the TCPA. Indeed, VoIP per-call service arrangements and DIP fees are typically so small that they are not profitable for a provider such as Flowroute without enormously high volume of calls made possible through an ATDS and prerecorded messages. By engaging in the conduct described more fully above, the Defendants acted in concert. Defendants intended and knew that the agreed violations would result in harm to Plaintiff and the Class members, because they knew Plaintiff and the Class Members pay for the calls they receive.

50. Defendants' acts and omissions in furtherance of their conspiracy proximately caused harm and damages to Plaintiff and the Class members. Plaintiff and the Class members seek to recover all their statutory, actual, direct and consequential damages, general and special damages, and punitive damages for the Defendants' conspiracy.

51. Defendants acted jointly, in concert, and/or in a conspiracy to violate the TCPA and obtain DIP fees. The Defendants' concerted conduct renders each and all of the Defendants jointly and severally liable for Plaintiff's and the Class members' losses and damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendants:

1. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4. Punitive damages;

5. An award of attorney's fees and costs to counsel for Plaintiff and the Class; and

6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Respectfully submitted,

WYNNE & WYNNE LLP

 /s/ David E. Wynne
David E. Wynne
**(Attorney-in-Charge)**
Texas Bar No. 24047150
Fed. No. 566468
Kenneth R. Wynne
Texas Bar No. 22110000
Fed. No. 837
711 Louisiana, Suite 2010
Pennzoil Place, South Tower
Houston, TX 77002
(713) 227-8835 (telephone)
(713) 227-6205 (facsimile)
dwynnne@wynne-law.com

*Attorneys for Plaintiff*